AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
A MACBOOK PRO CURRENTLY LOCATED AT FBI )
CHARLOTTE, 7915 MICROSOFT WAY, CHARLOTTE, )
NORTH CAROLINA 28273 )

Case No. 1:19 mj 28

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of child pornography/Sexual exploitation of children |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of child pornography |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Eugene Vinson, Special Agent - FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/19/2019
_____
*Judge's signature*

City and state: Asheville, North Carolina

W. Carleton Metcalf, U.S. Magistrate Judge
_____
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF A
MACBOOK PRO CURRENTLY LOCATED
AT FBI CHARLOTTE, 7915 MICROSOFT
WAY, CHARLOTTE, NORTH CAROLINA
28273

Case No. \_\_1:19 mj 28\_\_

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Eugene Vinson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I have been employed as a Special Agent of the FBI since February 2013, and am currently assigned to the Asheville Resident Agency of the Charlotte Division. I am primarily responsible for investigating violent crimes in special maritime and territorial jurisdictions and violent crimes against children in the Asheville area. While employed by the FBI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training at the FBI and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in forms

of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws and I am authorized by the Attorney General to request a criminal complaint and arrest warrant.

3.      I, Special Agent Eugene Vinson of the Federal Bureau of Investigation, a Division of the United States Department of Justice located in Washington D.C., assigned to the Charlotte NC Division, in the Asheville Residential Agency of the FBI, having been duly sworn; make the following statement in support of a request for a criminal complaint and arrest wan-ant.

4.      This Affidavit is intended to show only there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The Affiant's probable cause includes information known to me and/or provided to me by other federal, state, and/or local law enforcement officers. I am aware of the facts of this primarily by reviewing the case with the primary case agent, Special Agent Michael Gregory.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is a MacBook Pro, Serial C02MQ5LJFD56 hereinafter the "Device."  The Device is currently located at FBI Charlotte located at 7915 Microsoft Way, Charlotte, North Carolina 28273.

6.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## DEFINITIONS

7.      The following definitions apply to this Affidavit:

8.     18 U.S.C § 2251(a) prohibits the production of child pornography.  In relevant part, it states:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

7.     18 U.S.C § 2252A prohibits the possession of child pornography.  In relevant part, it states:

> (a) Any person who—
>
> **……………………………..**

3

(B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

8.      "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) : any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

9.      "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

10.      "Minor" means any person under the age of eighteen years.  See 18 U.S.C. § 2256(1).

11.      "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  See 18 U.S.C. § 2256(2).

4

## PROBABLE CAUSE

12.     The Federal Bureau of Investigation is investigating the production of child pornography by William Richard Hilliard JR (Hilliard), a resident of Cleveland County, North Carolina.  Hilliard was arrested on June 11, 2018 by the Myrtle Beach Police Department (MBPD) for surreptitiously filming several girls showering on his yacht.

13.     On June 10, 2018, Child Victim 7 (CV7) made a report with MBPD in reference to finding an iPad filming her showering while on Hilliard's yacht.  CV7 just recently graduated high school and she turned 18 years of age in March of 2018.  CV7 was a babysitter for Hilliard and as a graduation gift, Hilliard took CV7, her mother and several of CV7's friends for a cruise on his yacht in Myrtle Beach, South Carolina.  While CV7 was showering on the yacht, she saw an iPad sticking out of Hilliard's bag that was positioned towards the shower.  After CV7 inspected the iPad, she noticed it had been recording her for approximately 15 minutes while she showered.  She stopped the video and went through the camera roll, noting other videos were on the iPad of the other seven (7) girls on the yacht.  Along with those videos, CV7 observed there were videos of other females (both minor children and adults) taking showers.

14.     CV7 deleted the videos on the iPad of the girls on the boat and she developed a ruse so that she would be brought into the harbor by Hilliard.  After docking, CV7 and her mother made a report with MBPD.

15.     On June 10, 2018, Detective Angel Walker with the MBPD interviewed CV7 and the other girls that had been on the yacht.  The seven (7) other girls told Detective Walker they had taken showers between Bird Island and Restaurant Row.   CV7's mother told Detective Walker that Hilliard is her 4th cousin and he had been acting weird while they were all on the

5

yacht. CV's mother said that Hilliard would get her to steer the boat while he went and checked on the bathroom after every time one of the girls finished showering.

16. On June 11, 2018, Detective Walker interviewed Hilliard at the jail which was recorded. After advising him of his rights, Hilliard admitted to recording CV7 and the other girls on the yacht. He knows CV7 and her mother as they are distant cousins of his as well as CV7 babysits for him. He recorded them because he knew they would be naked in the shower. He advised Detective Walker he has been recording females for about the past two (2) years and that he sometimes pleasures himself sexually after watching them. He also admitted to recording videos from underneath a door. He said he has never sold any of the videos he made for profit. Of the girls recorded on his yacht, he acknowledged the youngest was 14 or 15 years of age.

17. Detective Walker obtained a state arrest warrant for Hilliard for violation of South Carolina Code § 16-17-470(B) (Eavesdropping, peeping, voyeurism) and arrested him on June 11, 2018.

18. A state search warrant for Hilliard's yacht, described as a Cruiser's Yacht 460 Express (hull ID: US-CRSSDA01D607, ship name: "Yachts O' Trouble") was obtained on June 11, 2018 and executed the same day. Detective S. Thackray, MBPD, seized several items to include the iPad that was previously discovered by CV7, two (2) laptops, SD memory cards, iPhone, iPod, and a flash drive. Prior to executing the search warrant, Detective Thackray spoke with CV7 who pointed out where the shower was located on the yacht. CV7 advised she was told to shower in Hilliard's room and that it never had a shower door attached because it was broken. Detective Thackray also discovered a shower door under a bench seat in the main room

6

of the boat. MBPD obtained additional state search warrants for the items that were seized from the yacht.

19.      On June 11, 2018, the Cleveland County Sheriff's Office (CCSO) was made aware of Hilliard's arrest in South Carolina. Furthermore, the CCSO learned that Hilliard had filmed females at his residence located at 2742 Clineland Road, Cherryville, North Carolina 28021, which is in Cleveland County. Detective Jessica Hamilton with the CCSO, learned from CV7's mother that after CV7 found the iPad recordings, CV7 went through the iPad and found other similar recordings. Some of these other recordings took place in Hilliard's daughter's bathroom at Hilliard's Clineland Road residence in Cleveland County.

20.      Also on June 11, 2018, Detective Hamilton contacted CV7 regarding the recordings at Hilliard's Cleveland County residence. CV7 said that after she went through the recordings while she was on the yacht, she found a recording that took place in Hilliard's daughter's bathroom. CV7 was able to describe the bathroom and knows the room from babysitting at his house in Cleveland County for the past two (2) years. The recording she observed was of Child Victim 5 (CV5), who is an adult, in the bathroom naked. CV7 knows CV5 because they both babysit for Hilliard.

21.      On June 12, 2018, CCSO executed a search warrant at Hilliard's residence in Cleveland County. Several items were seized during the search warrant including, but not limited to, video cameras, cell phones, SD cards and DVDs. Investigators discovered the door to Hilliard's bathroom door, where CV7 had observed the recording of CV5, had tool marks at the bottom of it. The tool marks were rough but appeared to have been made for the sole purpose of

7

fitting a recording device under the door. No other tool marks like those were located in the residence and the tool marks did not seem to be "normal" wear and tear.

22. Investigators with CCSO reviewed the evidence seized from Hilliard's residence. Videos of various females showering or in the bathroom were discovered. Videos of Hilliard and another victim referred to as Child Victim 3 (CV3) engaging in the course of sexual acts were also located. The sexual acts included oral sex and masturbation and some or all of the videos were taken when CV3 was a minor.

23. Other videos were located that were of Hilliard watching the videos he recorded. The videos were of girls in the shower of Hilliard's yacht, along with vaginal sex, oral sex, digital penetration and females undressing in the bathroom. Detective Derek Shaffer, CCSO, advised that of the videos that had been reviewed, it appeared there were approximately 30 victims that had been surreptitiously recorded and of those about 12 -15 victims were minors.

24. On June 26, 2018, Detectives Hamilton and Shaffer contacted CV3 by phone and advised her of the videos that were located at Hilliard's residence. CV3, who is currently in her mid-20s, said that when she was between 14-16 years of age, Hilliard paid her $1500 to have sex and let him video record it. The sexual acts occurred while Hilliard was living at 404 Farris Drive, Cherryville, North Carolina which is in Gaston County. CV3 said she only knew of one (1) video Hilliard recorded and that was of her performing oral sex on Hilliard. CV3 did not think he recorded them having vaginal sex. She also remembered another incident that occurred when she was on his yacht. She had been intoxicated and he took videos of her while she was in the shower. CV3 said a lot of the incidents happened on his yacht while it was docked on Lake Wylie which is in both North Carolina and South Carolina.

25.     On October 3, 2018, Special Agent Gregory acquired derivative evidence that had been seized by MBPD and CCSO from Deputy Shaffer at CCSO.

26.     On October 15, 2018, Special Agent Gregory was advised by Forensic Examiner Jason Whitt of child pornography located in the files provided by CCSO. Special Agent Gregory previewed three (3) of the files which have been detailed below:

a) **File Name:** [Child Victim 2 (CV2)] Bath 11

**File Path:** Blue SanDisk SDHC.E01/Partition1/NONAME[FAT32]/[CV2]Bath11.mov

**Description:** An approximately 1 minute 57 seconds video, which starts with two (2) juvenile naked females appearing to be between the ages of six (6) and eight (8) years of age in a bathroom. The video is being recorded by a male who appears to be William Richard Hilliard. The bathroom is consistent with a bathroom located at Hilliard's residence located at 2742 Clineland Road, Cherryville, North Carolina. One of the females appears to be Child Victim 8 (CV8) and the other female is believed to be CV2 based on the interaction between Hilliard and CV2. Hilliard is heard saying CV2's mother is at a Hornet's game. The females are observed rubbing lotion on each other while naked followed by CV2 rubbing lotion on her body. Hilliard is heard encouraging CV2 saying she "is doing good." The camera is focused on CV2 the majority of the video even while Hilliard and CV8 are talking to each other. Further, the video at one point appears to zoom in further on CV2 while she is naked which displays her genitals in a lewd and lascivious manner.

b) **File Name:** CV2 Bath 10

**File Path:** Blue SanDisk SDHC.E01/Partition1/NONAME[FAT32]/[CV2]Bath10.mov

**Description:** An approximately 2 minutes 32 seconds video, which starts with two (2) juvenile females appearing to be between the ages of six (6) and eight (8) years of age in a bathroom. The video is being recorded by a male who appears to be William Richard Hilliard. The bathroom is consistent with a bathroom located at Hilliard's residence located at 2742 Clineland Road, Cherryville, North Carolina. One of the females' appears to be CV8 and the other female is believed to be CV2 based on the interaction between Hilliard and CV2. CV8 is wearing a reddish pink bathing suit throughout the video and CV2 is at first observed only wearing pants and then proceeds to unclothe. As the video progresses, Hilliard walks in front of a mirror where it appears he is filming the video using a phone. During the majority of the video, CV2 is the main focus. She is observed fully nude with her genitals displayed in a lewd and lascivious manner.

9

c) **File Name:** mrvine_c1120

**File Path:** Blue SanDisk SDHC.E01/Partition1/NONAME[FAT32]/mrvine_c1120.avi

**Description:** An approximately 2 minutes 34 seconds video, which shows two (2) juvenile females appearing to be under the age of 12 interacting with the camera. One (1) female has dark hair and the other has auburn hair. The dark haired female is observed pulling her underwear down exposing her genitals and rubbing her genitals with her fingers. The female with auburn hair is observed unclothing and becomes fully nude. The dark haired female rubs the genitals of the female with auburn hair and proceeds to perform oral sex on her. The female with auburn hair then lays down in front of the camera while the dark haired female again performs oral sex on her.

27.     Based on the content of the three videos described in paragraph 15, I believe they meet the federal definition of child pornography and a federal search warrant for the derivative evidence seized by MBPD and CCSO was obtained to continue reviewing the content.

28.     During the review of the content from the derivative evidence, 14 newly identified victims of child pornography were located; I believe that number will increase as more victims have yet to be identified and review is still ongoing.  These victims ranged in ages 5 to 17.  Aside from the produced child pornography, evidence of possessing child pornography downloaded from the internet was also located on the derivative evidence.  The files containing child pornography, both produced by Hilliard and downloaded from the internet, were found on various SD cards and the Apple iPad seized by MBPD on Hilliard's yacht, ("Yachts O' Trouble"), as well as various SD cards and an Apple MacBook Air seized by CCSO at Hilliard's former residence, 2742 Clineland Road, Cherryville, North Carolina 28021.  Some of the files of child pornography that had been produced by Hilliard were manufactured using other Apple products to include an Apple iPad Air 2, Apple iPhone 4, Apple iPhone 5, Apple iPhone 6 and an Apple iPhone 7.

10

29.     A federal arrest warrant by criminal complaint for Hilliard was obtained on December 13, 2018 out of the Western District of North Carolina for violations of 18 U.S.C. § 2251(a), production of child pornography, and 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography. On December 18, 2018, FBI Charlotte and other Law Enforcement members arrested Hilliard in Gastonia, North Carolina. On January 16, 2019, the Federal Grand Jury returned a true Bill of Indictment for Hilliard for 26 counts of violating 18 U.S.C. § 2251(a), production of child pornography, 8 counts of violating 18 U.S.C. § 2252A(a)(1), transportation of child pornography, 1 count of violating 18 U.S.C. § 2252A(a)(2)(A), receipt of child pornography, 1 count of violating 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography, 1 count of violating 18 U.S.C. § 2423(a), transportation with intent to engage in criminal sexual activity and 5 counts of violating 18 U.S.C. § 2423(b), travel with intent to engage in illicit sexual conduct.

30.     On January 26, 2019, Special Agent Gregory was reviewing jail phone calls that had been placed by Hilliard while he was incarcerated at Horry County Sheriff's Office between June 11, 2018 to June 14, 2018 following his arrest in Myrtle Beach, South Carolina. A jail phone call placed by Hilliard to his brother, Jon Hilliard, was intercepted in which he discussed his computers. Hilliard discussed having "stuff" on his computer and that "they might find some old shit or some stuff floatin around..." along with advising had he known his computers were going to be seized, he "should have just threw all that shit in the water."

31.     The Device was located on Hilliard's yacht, ("Yachts O' Trouble") in the same room that the iPad, found by CV7, had been recording and was seized by MBPD on June 11, 2018. The Device is currently in the lawful possession of the FBI. The Device came into the

11

FBI's possession in the following way: MBPD seized the device and executed a State of South Carolina, Horry County search warrant on it; the Device was obtained by FBI Charlotte from MBPD on January 28, 2019. Therefore, while MBPD might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

32.     The Device is currently in storage at FBI Charlotte located at 7915 Microsoft Way, Charlotte, North Carolina 28273. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

33.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless

12

telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or

miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal

14

computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

    f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

34.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to save files that originated from a wireless telephone, digital camera, portable media player, GPS, PDA, Tablet, IP Address and the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

15

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

35.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

36.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

16

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

37. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the

17

storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

38.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

39.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

40.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B because based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, § 2251(a), production of child pornography and Title 18, United States Code, § 2252A(a)(5)(B), possession of child pornography have been committed by Hilliard.  There is also probable cause

19

to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

Respectfully submitted,

Eugene Vinson
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
On February ___19___, 2019.

W. CARLETON METCALF
UNITED STATES MAGISTRATE JUDGE

20

## ATTACHMENT A

The property to be searched is a MacBook Pro, Serial C02MQ5LJFD56 hereinafter the "Device." The Device is currently located at FBI Charlotte located at 7915 Microsoft Way, Charlotte, North Carolina 28273.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.     All records on the Device described in Attachment A that relate to violations of Title 18 U.S.C. §§ 2251 and 2252A, certain activities relating to material involving the sexual exploitation of minors, including:

    a.  Visual depictions of minors engaged in sexually explicit conduct and child pornography, in any format.

    b.  Digital records, documents, writings and correspondence with others pertaining to the possession, or receipt of visual depictions of minors engaged in sexually explicit conduct.

    c.  Digital records, documents, writings and correspondence with other persons related to this case.

2.     Evidence of user attribution showing who used or owned the files on the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.